UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

**FILED**

Apr 21 2020

ARTHUR JOHNSTON, CLERK

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Mississippi

| | |
|---|---|
| United States of America<br>v.<br>Antony Daniel Abreu a/k/a Anthony Abreu,<br>Christopher Q. Nguyen and<br>Darrell Young<br><br>*Defendant(s)* | Case No.<br>1:20-mj-00533-RHW |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 20, 2020__ in the county of __Harrison__ in the __Southern__ District of __MS Southern Division__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substances, to wit, a mixture or substance containing a detectable amount of Cocaine, a schedule II controlled substance. |

This criminal complaint is based on these facts:

See affidavit attached hereto and incorporated herein

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Jason Elder, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-21-20

_____
*Judge's signature*

City and state: Gulfport, MS

Robert H. Walker, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Jason Elder, being first duly sworn, hereby depose and say that:

1. I am a special agent with the Department of Homeland Security, Homeland Security Investigations (HSI) and have been since May 2007. As a Homeland Security Investigations Special Agent, I have attended training courses which provided specialized training in the elements of federal criminal law. Prior to my present employment, I was employed by United States Customs and Border Protection in Gulfport, Mississippi, and by the Harrison County Sheriff's Department in Gulfport Mississippi. During my law enforcement employment, I have been involved in various types of criminal investigations including but not limited to homicide, burglary, and narcotics investigations. I have attended training courses that provided specialized training in improper importation and smuggling investigations. I have been involved in various types of electronic surveillance, debriefing of defendants, witnesses, and informants, and undercover operations.

2. In March 2020, the Department of Homeland Security, Border Enforcement Security Task Force, Gulfport, Mississippi (DHS Gulfport BEST), received information from a Source of Information (SOI) about a Drug Trafficking Organization (DTO) in New York that wanted the SOI to assist with smuggling cocaine into the United States. At the direction of agents, the SOI conducted telephone calls with **ABREU** and arranged a face to face meeting. On March 5, 2020, **ABREU** advised the SOI that he would be flying from New York to New Orleans, Louisiana on March 6, 2020, to meet with the SOI. **ABREU** advised he was coming to meet with the SOI to discuss the smuggling of large quantities of cocaine from the Dominican Republic into Puerto Rico and then into the continental United States. Additionally, **ABREU** advised that members of the DTO had inquired about purchasing a go-fast boat to assist with moving the cocaine from the Dominican Republic to Puerto Rico. At the request of agents, the SOI located a boat for sale and

arranged to show it to **ABREU** during his visit. During prior telephone calls, **ABREU** asked if the SOI could provide cocaine to **ABREU** until the cocaine from the Dominican Republic arrived, the SOI advised that he/she could. On March 6, 2020, Antony Daniel **ABREU** a/k/a Anthony Abreu, an associate of the DTO, traveled to Gulfport, Mississippi and met with the SOI.

3. On March 6, 2020, at approximately 9:30 a.m., **ABREU** telephonically contacted the SOI and advised he had arrived in New Orleans, Louisiana, and was renting a car for the drive to Gulfport, Mississippi. The SOI advised **ABREU** to meet him/her at the Buffalo Wild Wings restaurant, 15530 Daniel Blvd., Gulfport, Mississippi.

4. The SOI was surveilled from a prearranged meeting location, arriving at approximately 12:15 p.m., at the restaurant and parked his/her vehicle in the southeast parking area near the back of the restaurant. At approximately 12:25 p.m., a black Chevrolet Impala displaying Louisiana license N545618 (registered to Budget Rental Car) arrived in the area. A short time later the black Chevrolet Impala arrived and parked near the vehicle driven by the SOI. A Hispanic male was observed (later identified as **ABREU**) exiting the vehicle and met with the SOI. According to the SOI, **ABREU** inquired about purchasing cocaine. The SOI advised **ABREU** that the cost of the cocaine would be $24,000 per kilogram if the cocaine was picked up in Gulfport, Mississippi. The SOI advised **ABREU** that if the cocaine would be delivered to New York an additional fee of $2000 per kilogram would have to be paid in advance.

5. At approximately 12:30 p.m., the SOI contacted SA Elder, as part of a prearranged conversation, and requested to have the driver bring the cocaine to his/her location. SA Elder contacted an HSI task force agent, acting in an undercover (UC) capacity, who was posing as a participant in the SOI's narcotics distribution organization. The UC agent, who was in possession of two kilograms of cocaine "flash" provided by the Harrison County Sherriff's Office, was observed

arriving at the Buffalo Wild Wings. The SOI and **ABREU** were observed as they entered the vehicle driven by the UC agent. The SOI advised that while in the UC vehicle **ABREU** physically reviewed the cocaine and made a video call to an unknown Asian male (First Name Unknown, Last Name Unknown) FNU LNU. During the video call, **ABREU** advised FNU LNU that the cocaine was good quality. A short time later, the SOI and **ABREU** were observed exiting the vehicle and talking while standing behind **ABREU**'s vehicle. During this conversation, **ABREU** asked the SOI if **ABREU** could see the previously discussed boat. The SOI contacted the owner of the boat and asked if he/she could bring the boat to the intersection of Highway 603 and Interstate 10 in Bay St. Louis, Mississippi. The owner agreed advising he/she would bring the boat to Bay Fuel, 13029 Highway 603, Bay St. Louis, Mississippi. At approximately 12:43 p.m., THE SOI and **ABREU** departed Buffalo Wild Wings in separate vehicles, and were surveilled as they traveled to Bay Fuel, arriving at approximately 1:11 p.m. At approximately 1:17 p.m., the owner of the boat arrived at Bay Fuel, agents observed as **ABREU** recorded video footage of the boat. The SOI advised while videoing the boat, **ABREU** was on a video call with an unknown individual.

6. At approximately 1:20 p.m., the SOI and **ABREU** left Bay Fuel and were surveilled as they traveled south on Hwy 603. While traveling on Hwy 603, the SOI contacted SA Elder and advised that **ABREU** wanted to purchase "burner" phones for both the SOI and **ABREU**. The SOI advised they were going to the Walmart, 460 Highway 90, Waveland, Mississippi, so **ABREU** could purchase the phones. At approximately 1:20 p.m., the SOI and **ABREU** were observed as they arrived at and entered the Walmart. At approximately 1:26 p.m., the SOI and **ABREU** were observed exiting the Walmart and entering their vehicles. **ABREU** was observed departing the Walmart, traveling west on Hwy 90 towards Interstate 10. SA Lee Robinson surveilled **ABREU** to

the intersection of Hwy 90 and Interstate 10 at which time **ABREU** was observed entering the west bound lanes of Interstate 10 toward Louisiana.

7. At approximately 1:38 p.m., SA Elder and SA Howard O'Gwin conducted a debrief of The SOI. During the debrief, the SOI advised that **ABREU** is in contact with an unknown Asian male, located in New York, who wants to purchase large quantities of cocaine. **ABREU** advised that he would return to Gulfport in the near future and pay transportation costs to the SOI in order have the cocaine transported to New York. According to the SOI, the DTO in the Dominican Republic is interested in purchasing the go-fast boat and would be in contact with the SOI soon. At approximately 3:00 p.m., SA Elder spoke with the manager of Budget Rental Car at the Gulfport International Airport. SA Elder provided the manager with the license plate from the black Chevrolet Impala. The manager advised that the black Chevrolet Impala, Louisiana license N545618 had been rented by **ABREU** on March 6, 2020 at the New Orleans, Louisiana airport, utilizing New York driver's license 269446818.

8. On April 15, 2020, **ABREU** advised the SOI that he and his partner were renting a house in Gulfport and would be in town the next few days to purchase 17 kilograms of cocaine. **ABREU** advised the SOI that his partner would arrive first to observe the area. On April 17, 2020, **ABREU** contacted the SOI and advised that he and his partner were in Gulfport, ready to do business. On April, 17, 2020, the SOI met **ABREU** at a business located at 9440 Highway 49, Gulfport, Mississippi. The SOI advised **ABREU** he/she would have the cocaine delivered once **ABREU** showed the payment for the cocaine. The SOI advised ABREU that he/she can deliver the cocaine to the house in Gulfport. **ABREU** advised the SOI that his boss did not want the SOI to come to the house. The SOI advised that **ABREU** was driving a blue Infinity sport utility vehicle with Louisiana license N524366 (rental car).

9. On April 20, 2020, the SOI contacted **ABREU** and advised that he/she was ready to meet to discuss the 17 kilograms of cocaine. The SOI and **ABREU** discussed meeting at different locations and decided to meet at a business at 2417 25th Ave, Gulfport, Mississippi. During this meeting ABREU stated his boss wanted to take the cocaine to the house and test it and if was good would send the money back to the SOI. Both the SOI and **ABREU** departed the business. **ABREU** traveled south on 25th avenue. **ABREU** was surveilled to Bett Circle, Gulfport, Mississippi. **ABREU** was observed by agents picking up an Asian, later identified as **Christopher Q. NGUYEN** and black male later identified as **Darrell YOUNG**. Agents lost contact of the Infiniti. It was later found abandoned at 2711 14th Street, Gulfport, Mississippi, agents-maintained surveillance of the vehicle.

10. At approximately 11:30 a.m., the SOI contacted **ABREU** and advised that if **ABREU** showed half the payment the SOI would have the cocaine delivered to the house. **ABREU** agreed to meet back at the 2417 25th Ave, business. Agents observed a black Ford Focus Louisiana license N544282 go to 2711 14th Street, the location of the Infiniti. **ABREU** and **YOUNG** exited the Ford and entered the Infiniti. Agents surveilled both vehicles, the Infiniti arrived at the business located at 2711 14th Street, Gulfport, Mississippi. The Ford, driven by **NGUYEN**, arrived at the business located at 2111 25th Ave, Gulfport, Mississippi.

11. At approximately 12:00 p.m., the SOI arrived at 2711 14th Street, Gulfport, Mississippi and met with **ABREU** and **YOUNG** at which time the SOI observed a large amount of United States currency in a black duffle bag. The SOI contacted Special Agent Jason Elder and advised him that the money was in the vehicle. At approximately 12:05 p.m., Agents approached and arrested **ABREU, YOUNG** and **NGUYEN**. Agents found a black duffle bag with a large amount of United States currency.

12. Based on the aforementioned facts and circumstances, your affiant believes there is probable cause that **Antony Daniel ABREU a/k/a Anthony Abreu, Christopher Q. NGUYEN and Darrell YOUNG** have violated Section 846, Title 21, United States Code, conspiracy to possess with intent to distribute a detectable amount of Cocaine.

_____
JASON ELDER, Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn and subscribed before me the __21st__ day April 2020.

_____
UNITED STATES MAGISTRATE JUDGE